IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 13, 2015 Session

## ROBERT W. MILLS v. NITA D. MILLS, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH1301272    Arnold B. Goldin, Chancellor**

_____

**No. W2014-00855-COA-R3-CV – June 24, 2015**
_____

This case involves various causes of action related to the administration of an estate, specifically, the executor's action in failing to fund a residuary trust. The trial court granted summary judgment on the grounds that no assets remained in the estate to fund the residuary trust, the expiration of the statute of limitations, and laches. Although we rely on different grounds, we affirm the trial court's order granting summary judgment and dismissing the complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, P. J., W.S., delivered the opinion of the Court, in which BRANDON O. GIBSON, J., and KENNY ARMSTRONG, J., joined.

Lee S. Saunders and Robert Steven Butler, Somerville, Tennessee, for the appellant, Robert W. Mills.

Kacey L. Faughnan, Edward T. Autry, and Joseph B. Reafsnyder, Memphis, Tennessee, for the appellees, Nita D. Mills, and James Johnson.

**OPINION**

**Background**

On January 30, 2013, Plaintiff/Appellant Robert W. Mills ("Appellant") filed a Complaint to Compel Disclosure of Residual Trust or Alternatively for Declaratory Judgment and Judicial Estoppel, For Equitable Relief, For Constructive Trust to Prevent Unjust Enrichment, For Resulting Trust, For Accounting and for Injunction against Appellees Nita D. Mills ("Ms. Mills" or "Defendant Mills"), Individually and as Executrix of the Estate of William B. Mills, Deceased, and James Johnson ("Defendant Johnson"), Trustee of the Nita D. Mills Trust (collectively, "Appellees"). The complaint generally alleged that the assets of Appellant's deceased father, William B. Mills ("Decedent"), had been misappropriated by Ms. Mills, the Appellant's step-mother, after the administration of Decedent's estate. Decedent died in 1987, and his probate estate was closed in 1990. The dispute concerned the administration of Decedent's will, which provided a residuary trust benefitting Appellant. According to Appellant, Decedent, one his deathbed, verbally expressed his desire that his property should be divided as follows: (1) a specific bequest to Decedent's sister of $100,000.00; (2) a specific bequest to Appellant in the approximate amount of $1,000,000.00; and (3) the remainder of his property one-half to his wife, Ms. Mills, and one-half to Appellant in trust. At the time the estate was closed, Appellant signed a waiver attesting to the fact that he had received all property bequeathed to him, and releasing Ms. Mills from any further liability in relation to the estate. However, Appellant alleged that after the estate was closed with no residuary trust established, Ms. Mills made continuous assurances to Appellant that she would fund the trust in accordance with Decedent's wishes. Accordingly, Appellant sought an order directing Ms. Mills to fund a trust representing one-half of Decedent's remaining estate after the distribution of the first two bequests. Although Appellant generally outlined the terms of Decedent's will in his complaint, he did not include a copy of the will as an attachment.

Appellees jointly filed a motion to dismiss on the basis of the expiration of the statute of limitations. Attached to the motion to dismiss was a copy of Decedent's Last Will and Testament. Decedent's will contains six specific bequests listed in order of priority. First, Decedent directed that all funeral, testamentary, and tax expenses related to Decedent's death or the administration of the estate would be paid. Second, Decedent directed that his sister, Marjorie Andre, should receive $100,000.00, if she should survive Decedent. Third, Decedent confirmed that all household goods were the sole and separate property of Ms. Mills. Fourth, Decedent directed that Appellant would receive "an amount equal in value to that which will provide the maximum unified credit and estate death tax credit permitted to my estate by the Internal Revenue Code," should Appellant survive Decedent. Fifth, Decedent directed that Ms. Mills should receive:

2

[A]n amount equal to one-half (1/2) of my adjusted gross estate[1] as finally determined under the Internal Revenue Code for federal estate tax purposes, diminished, however, by the value of any property or interests in property which pass or have already passed to my said wife under any other item of this will (excluding property or interests in property provided for my wife in the Item SIXTH of this Will), but only to the extent that such property or interests included in determining the value of my gross estate for federal estate tax purposes and which qualify for the marital deduction under the Federal Estate Tax Law in effect at my death.

Sixth, and finally, Decedent directed that a trust be created from the residual property in the estate for the benefit of Appellant. The trial court eventually denied the motion to dismiss.

Appellees subsequently filed a motion for summary judgment, arguing that Ms. Mills was under no duty to fund the residuary trust as no assets existed in the estate to fund the residuary trust, that all claims were barred by the applicable statutes of limitations, waiver, judicial estoppel, laches, and that any alleged oral promise was not supported by consideration. Appellees included with their motion a lengthy Statement of Undisputed Facts. Pertinent to this appeal, the Statement of Undisputed Facts submitted by Appellees provided

---

[1] Adjusted gross estate is defined as "the value of the gross estate reduced by the sum of the amounts allowable as a deduction under section 2053 or 2054." 26 U.S.C.A. § 6166. Section 2053 specifically provides that:

> [T]he value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—
>
> (1) for funeral expenses,
> (2) for administration expenses,
> (3) for claims against the estate, and
> (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

26 U.S.C.A. § 2053(a). Section 2054 provides that "the value of the taxable estate shall be determined by deducting from the value of the gross estate losses incurred during the settlement of estates arising from fires, storms, shipwrecks, or other casualties, or from theft, when such losses are not compensated for by insurance or otherwise." 26 U.S.C.A. § 2054.

significant background information regarding the administration and closing of Decedent's estate. According to the Statement of Undisputed Facts:[2]

> 5. On December 30, 1987, the Last Will and Testament of [Decedent] was admitted to probate by the Probate Court of Shelby County, Tennessee under Docket Number B-10927.
>
> 6. The Defendant, [Ms.] Mills, was appointed to serve as Executrix of the Estate of [Decedent] by Order entered December 30, 1987.
>
> 7. At the time of the death of the Decedent [], the total value of the assets owned jointly with right of survivorship and/or as tenants by the entirety between the Decedent [], and his spouse, [Ms.] Mills, was $8,193,203.58.
>
> 8. At the time of the death of the Decedent [], the total value of the assets individually owned by the Decedent [], was $198,110.99.
>
> * * *
>
> (f) The total value of assets owned individually by the Decedent [], at the time of his death (according to the Federal Estate Tax Return) was $198,110.99, exclusive of the $2,500.00 of miscellaneous furniture, furnishings and personal effects.
>
> [9](g) The total value of assets owned individually by the Decedent [], at the time of his death (according to the Initial Inventory) was $193,806.83.
>
> 10. Because the total value of the assets individually owned by the Decedent [], ($198,110.99 per the Form 706, and $193,806.83 per the Initial Inventory) and thus subject to a probate administration was not sufficient to fully fund either specific bequest under the Last Will and Testament of [Decedent] (Article Second - $100,000 payable to Marjorie Andre and Article Fourth - $500,000 payable to [Appellant]), [Ms.] Mills executed a Disclaimer filed with the Probate Court of Shelby County, Tennessee on February 26, 1988, disclaiming

---

[2] Citations to attached documents and other parts of the technical record are omitted for ease of reading.

4

the following three (3) assets which were held as tenants by the entirety between the Decedent [] and [Ms.] Mills:

(a) Tennessee Local Development Authority State Loan Program Revenue 1986 Refunding Series A; Par Value = $500,000.00; Purchased by the Decedent [], on May 29, 1987;

(b) Tennessee Local Development Authority State Loan Program Revenue 1986 Refunding Series A; Par Value = $500,000.00; Purchased by the Decedent [], on May 29,1987; and

(c) Tennessee Housing Development Agency homeownership Program Bonds Issue F; Par Value = $250,000.00; Purchased by the Decedent [], on September, 1, 1987.

11. An Order accepting the disclaimer of non-probate property and accepting the disclaimed property as a probate asset of the Estate of [Decedent] was entered by the Probate Court of Shelby County, Tennessee on March 23, 1988.

12. The total value of the disclaimed assets was $1,065,578.76.

13. Accordingly, the total value of the assets subject to a probate administration from and after the filing of the disclaimer of non-probate property on February 26, 1988 and the entry of the Order accepting the disclaimer of non-probate property and accepting the disclaimed property as a probate asset of the Estate of [Decedent] on March 23, 1988 was $1,263,689.75.

14. On or about June 29, 1989, Ms. Mills, in her capacity as Executrix of the Estate, filed an interim settlement with the Probate Court of Shelby County, Tennessee showing an initial inventory of $1,228,806.83.[3]

*  *  *

17. Pursuant to the terms of the Last Will and Testament of [Decedent], the aforementioned assets ($1,263,689.75 using the

---

[3] Appellees' Statement of Undisputed Facts explains in detail the difference between the total value of the estate after the disclaimer and the initial inventory. The fact that the actual value and the initial inventory differed is not at issue in this appeal.

Form 706) were used to fund or satisfy the bequests, in their order of priority, as follows:

(a) $33,075.19 was utilized for the payment of funeral expenses and expenses incurred in administering property subject to claims.

(b) $14,834.10 was utilized for the payment of debts of the decedent.

(c) $100,000 was utilized for the payment of the specific bequest to Marjorie Andre pursuant to the Second Article of the Last Will and Testament.

(d) $917,669.47 was distributed to [Appellant] pursuant to the Fourth Article of the Last Will and Testament.

(e) The balance or $193,806.83 was distributed to [Ms.] Mills in partial satisfaction of the Fifth Article, of the Last Will and Testament which required that one-half (1/2)of the Adjusted Gross Estate was bequeathed to [Ms.] Mills.[4]

(f) Following the partial satisfaction of the bequest to [Ms.] Mills in the Fifth Article of the Last Will and Testament, there were no estate funds remaining to fund any portion of Sixth Article which provided for the creation of QTIP or Residual Trust contained therein.

(g) Accordingly, there was no QTIP or Residual Trust created and no assets were distributed to Morris H. Mills in his capacity as Trustee.

\* \* \*

---

[4] The Statement of Undisputed Facts explained that applying the applicable federal rules governing calculating the adjusted gross estate, Decedent's adjusted gross estate totaled $5,312,382.25. Accordingly, Appellant's one-half interest totaled $2,656,191.13. Accordingly, the $193,806.83 that Ms. Mills actually received under this bequest represented only partial satisfaction of the bequest.

26. On March 21, 1990, the Estate of [Decedent] was closed and [Ms.] Mills was discharged as Executrix.

In addition, the Statement of Undisputed Facts indicated that that Appellant participated in a meeting with Ms. Mills and attorney David T. Popwell prior to signing the waiver in 1990.[5] In this meeting, Mr. Popwell allegedly informed Appellant that because a substantial portion of Decedent's property was owned with Ms. Mills as tenants by the entirety, and therefore was not part of the estate, there was no money left in the estate to fund the residuary trust, and that no trust would be funded from the estate. Mr. Popwell also informed Appellant that "but for the Disclaimer of certain assets held as tenants by the entirety by [Ms.] Mills . . . , [Appellant] would have received no assets from the Estate[.]" Attached to Appellees' Statement of Undisputed Facts was a sworn affidavit from Mr. Popwell generally confirming discussion of the meeting contained in the Statement of Undisputed Fact. Accordingly, Appellees argued that Appellant knew or should have known, prior to signing the waiver in 1990, that the residuary trust had not been funded.

On February 28, 2014, Appellant filed a response in opposition to Appellees' Statement of Undisputed Facts. In his response, Appellant disputed many of the relevant allegations contained in Appellees' Statement of Undisputed Facts due to Appellees' failure to properly respond to requests concerning these facts during discovery. Notably, however, Appellant directed the court to no documents or other evidence in the record to dispute that: (1) the will contained in the record was the true Last Will and Testament of Decedent; (2) he received considerably more funds from the estate than he was originally entitled due to Ms. Mills's disclaimer of certain jointly owned property; and (3) following the partial satisfaction of Ms. Mills's specific bequest, there were no funds remaining in the estate to fund the final bequest, namely the residuary trust benefiting Appellant.

Appellant did, however, contest Appellees' assertions regarding the meeting with Mr. Popwell. Specifically, Appellant filed his own affidavit contesting the affidavit of Mr. Popwell.[6] In his affidavit, Appellant alleged that he attended no meeting with Mr. Popwell and that he was never informed that Ms. Mills did not intend to fund the residuary trust. Instead, Appellant alleged that Ms. Mills continually informed Appellant that the residuary trust would be funded and that he did not learn that Ms. Mills's representation was false until

---

[5] Neither Appellees' Statement of Undisputed Facts nor the affidavit of the attorney who allegedly had the meeting with Appellant indicates either an exact or approximate date for the meeting. Because the meeting concerned whether Appellant would sign the waiver, we infer that it occurred prior to the execution of the waiver on January 17, 1990.

[6] Although Appellant's response was technically untimely, the trial court in its later order expressly ruled that it would consider his submissions. Appellees do not raise this ruling as an error on appeal. Accordingly, we will likewise consider Appellant's response in opposition to Appellees' motion for summary judgment as if it had been timely filed.

7

2010, when an uncle informed him that Ms. Mills had not funded the trust. Nothing in Appellant's affidavit disputed the statement in Appellees' Statement of Undisputed Facts that the estate was extinguished by the partial satisfaction of Ms. Mills's specific bequest and that, therefore, no funds remained in the estate to fund the residuary trust.

After a hearing on the motion, the trial court granted summary judgment in favor of Appellees on three grounds: (1) the expiration of the statutes of limitations governing breaches of contract and breaches of fiduciary duties; (2) the fact that no assets remained in the estate to fund the residuary trust; and (3) laches. The trial court entered a final judgment on March 28, 2014. Appellant appealed.

## Issues Presented

Appellant raises three issues, which are taken from his brief:

1. Whether the trial court erred in granting summary judgment on Causes of Action 1 through 5, on the ground that claims for breach of duty and breach of contract are barred by the applicable statute of limitations.
2. Whether the trial court erred in granting summary judgment on Causes of Action 1 through 5, on the ground that there were no funds subject to probate administration left to distribute.
3. Whether the trial court erred in granting summary judgment on Causes of Action 1 through 5, on the ground that the claims are barred by the doctrine of laches.

## Standard of Review

With regard to summary judgments, this Court explained in *Estate of Boote v. Roberts*:

> The trial court's resolution of a motion for summary judgment is a conclusion of law, which we review de novo on appeal, according no deference to the trial court's decision. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). Summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *see Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).

8

This action was filed [after July 1, 2011]. Therefore, the trial court was required to apply the summary-judgment standard set forth in Tennessee Code Annotated § 20-16-101. That statute provides:

In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

(1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

(2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101 (Supp. 2012).

***Estate of Boote v. Roberts***, No. M2012-00865-COA-R3-CV, 2013 WL 1304493, at *8–9 (Tenn. Ct. App. Mar. 28, 2013), *no perm. app. filed* (footnotes omitted).

## Discussion

The trial court granted summary judgment on three alternative bases: (1) the expiration of the statutes of limitation governing breach of contract actions, Tennessee Code Annotated Section 28-3-109(a), and fiduciary duties in estate actions, Tennessee Code Annotated Section 28-3-110(a); (2) the exhaustion of the estate prior to the funding of the residuary trust; and (3) laches. Appellant argues that the trial court erred in treating his claims collectively and that considering each claim independently, summary judgment was inappropriate.

The Tennessee Supreme Court in ***Benz-Elliott v. Barrett Enterprises, LP***, 456 S.W.3d 140, 141 (Tenn. 2015), recently held "that a court must identify the gravamen of each claim alleged to determine the applicable statute of limitations. Identifying the gravamen of a claim requires a court to consider both the legal basis of the claim and the injury for which damages are sought."[7] In his complaint and his brief to this Court, Appellant divides his claims into

---

[7] We note that the ***Benz-Elliot*** decision was released after the trial court granted summary judgment in this case. Accordingly, the trial court did not have the benefit of the Tennessee Supreme Court's guidance on this issue.

9

five separate causes of actions. Accordingly, we will consider each of Appellant's causes of action individually.

## Cause of Action 1

In his complaint, Appellant's first count sought to compel disclosure of any trust that may have been established in the event that Appellant was unaware of such trust. During the course of the proceedings in the trial court, Ms. Mills confirmed that no trust was created to benefit Appellant. Accordingly, Appellant admits, and this Court agrees, that Count 1 is moot. *See Pylant v. Haslam*, No. M2011-02341-COA-R3CV, 2012 WL 3984648, at *4 (Tenn. Ct. App. Sept. 11, 2012) ("A case will generally be considered moot if it no longer serves as a means to provide relief to the prevailing party.") (quoting *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994)).

## Cause of Action 2

A thorough review of Appellant's second cause of action reveals that it relates solely to Ms. Mills's duties as executor of Decedent's estate. After detailing the undisputed facts regarding Decedent's will and the administration of the estate, Appellant's second cause of action contains the following relevant allegations:

> 43. On June 28, 1989, Defendant Mills, as Executrix, filed under oath an interim settlement with the Probate Court reporting, in part, debits belonging to the estate of which she was chargeable valued at approximately $11,888,000.00. After payment of expenses, debts, taxes, partial distributions and specific bequests, undistributed assets valued at $11,402,000.00 remained [in] the estate as of June 1989.

> 44. In January 1990, Defendant Mills paid [Appellant] the remaining portion of his specific bequest under the Will in the amount of $660,000.00, after which it is believed that undistributed assets valued at approximately $10,742,000.00 remained a part of the estate.

> 45. Defendant Mills in bad faith has failed and refused to set up the residual trust pursuant to the Will without legal justification.

> 46. During 2010 [Appellant's] uncle, Morris Mills, stated to [Appellant] that "she [Defendant Mills] did not set up the trust like she was supposed to".

10

47. Upon information and belief, Defendant Mills has caused most, if not all, of the undistributed assets which were a part of the Decedent's estate to be transferred into the Nita D. Mills Revocable Living Trust of which Defendant Johnson is Trustee, including assets that Defendant Mills as Executrix had a duty to distribute to Morris Mills as Trustee of the residuary trust.

48. Defendant Mills should be judicially estopped from denying that, as of June 28, 1989, assets belonging to the estate for which she was chargeable were valued at $11,887,718.48 and that after payment of expenses, debts, taxes, partial distributions and specific bequests totaling approximately $486,000.00, there remained undistributed assets in the estate valued at approximately $11,402,000.00.

49. Following the $660,000.00 specific bequest payment in January 1990, undistributed assets valued at approximately $10,742,000.00 remained a part of the estate.

50. Pursuant to Tenn. Code Ann. §30-2-701, Defendant Mills, as Executrix, was charged with the duty to pay the balance of assets in the estate to the legatees entitled to it under the Will, to wit: one-half (1/2) to Defendant Mills individually, and one-half (1/2) to Morris Mills as Trustee of the residual trust.

51. The Doctrine of Judicial Estoppel prohibits Defendant Mills from asserting now that there were no assets in the estate to be distributed to the residuary trust because her Interim Settlement filed under oath in June 1989 showed that there remained undistributed assets in the estate valued at approximately $11,402,000.00.

Accordingly, Appellant argued that because $11,402,000.00 remained in the estate, the court should enter an order estopping Ms. Mills from "denying that the estate held assets that should have been distributed to" Appellant, and requested an order requiring Ms. Mills to distribute one-half of those assets to him.

In his brief, Appellant appears to have altered his argument. Instead of asserting that Decedent's estate held $11,402,000.00 in undistributed assets, he now asserts that this claim involves the assets that were jointly owned by Decedent and Ms. Mills at the time of Decedent's death that passed to Ms. Mills as a tenant by the entirety. It is well-settled, however, that property held as tenants by the entirety is not included in a decedent's estate

11

"because property held as tenants by the entirety passes outside of probate and is not subject to disposition in [a] [d]ecedent's will." *In re Estate of Grass*, No. M2005-00641-COA-R3-CV, 2008 WL 2343068, at *28 (Tenn. Ct. App. June 4, 2008) (citing *Grahl v. Davis*, 971 S.W.2d 373, 378 (Tenn. 1998) ("Upon the death of one spouse, ownership of tenancy by the entirety property immediately vests in the survivor, and the laws of descent and distribution do not apply.")). However, Appellant never amended his complaint to alter his allegations regarding this cause of action in any way. He cannot now claim that this cause of action concerns property that was not legally a part of Decedent's estate, when a thorough reading of his second cause of action expressly states that it is based upon undistributed assets of the estate, rather than non-probate assets.

Further, we agree with the trial court's conclusion that there can be no claim that Appellant was injured by Ms. Mills's failure to fund the residuary trust from the remaining funds in Decedent's estate because the estate's funds were extinguished in partial satisfaction of the specific bequest to Ms. Mills. Appellant does not appear to argue that property remained in the estate to fund the residuary trust. Indeed, he cannot, as he never submitted any evidence to dispute this fact in Appellees' Statement of Undisputed Facts.

When a defending party submits a properly supported summary judgment motion either negating an essential element of the non-moving party's proof or demonstrating that the non-moving party's evidence is insufficient to establish its claim, Tenn. Code Ann. § 20-16-101, the burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists. *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). Here, Ms. Mills submitted a motion for summary judgment indicating that Appellant could assert no cause of action with regard to Ms. Mills's failure to create the residuary trust provided in Decedent's will because after the partial satisfaction of Ms. Mills's specific bequest, no assets remained in the estate to fund the residuary trust. Further, Appellees asserted that regardless of the failure to fund the residuary trust, Appellant received more from his specific bequest in the will than he was legally entitled. Appellees supported these allegations with a properly filed Statement of Undisputed Facts and other supporting documents. While Appellant indicated that he disputed these facts, he offered no proof of any kind to show that Appellees' assertions were incorrect. Instead, he merely pointed to various discovery requests that were not adequately answered by Ms. Mills. However, this is not an appropriate way to respond to a properly supported motion for summary judgment. Instead, a non-moving party may meet their burden of production in one of four ways:

> (1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit

12

explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06.

***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted). With regard to presenting evidence, the nonmoving party must present specific facts establishing that issues of fact exist and may not simply rest upon the pleadings, but must offer proof by affidavits or other discovery materials to show that there is a genuine issue for trial. ***Simerly v. City of Elizabethton***, No. E2009-01694-COA-R3-CV, 2011 WL 51737, at \*6 (Tenn. Ct. App. Jan. 5, 2011).

Here, Appellant simply failed to meet his burden. Rather than pointing to evidence ignored by Ms. Mills or submitting additional evidence in the form of depositions, affidavits, or discovery responses, Appellant simply took issue with the way in which Appellees responded to discovery requests. If Appellant was dissatisfied with Appellees' discovery responses, he certainly was permitted to seek additional discovery through the submission of an affidavit. ***Martin***, 271 S.W.3d at 84. A thorough review of the record, however, indicates that while Appellant often took issue with the depth to which Appellees responded to discovery,[8] he filed no affidavit explaining the need for additional discovery.[9] Accordingly,

---

[8] For example, with regard to Undisputed Fact 17 regarding the exhaustion of the estate so that no assets remained to fund the residuary trust, Appellant responded:

> Disputed. The Defendant, [Ms.] Mills, in response to INTERROGATORY NO.'s 1,2,3, and 4 and REQUEST FOR PRODUCTION NO.'s 1,2,3, and 4 of Plaintiff's First Set of Interrogatories and Request for Production Propounded to Defendant [Ms.] Mills, which dealt with the subject matter of this purported undisputed material fact, stated that she was without sufficient knowledge or information to respond to the interrogatory and that the Federal Estate Tax Return (Form 706) was the best evidence and most responsive to the interrogatory. In her response to INTERROGATORY NO. 4 and REQUEST FOR PRODUCTION NO. 4, she objected to the interrogatory and request as overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible evidence concerning any disputed issue of law or fact in this case. Additionally, in sub part (d) the amount distributed to [Appellant] could not have been pursuant the Fourth Article of the Last Will and Testament of William B. Mills because it exceeds the $600,000.00 threshold for the federal unified tax credit for 1987, the year of the decedent's death. See INTERROGATORY NO. 1, 2, 3, and 4 and RESPONSE NO. 1, 2, 3, and 4 Nita D. Mills Response to Plaintiff's First Set of Interrogatories and Request for Production Propounded to Defendant; See also REQUEST FOR PRODUCTION NO.'s 1, 2, 3, and 4 and RESPONSE NO.'s 1, 2, 3, and 4 Nita D. Mills Response to Plaintiff's First Set of Interrogatories and Request for Production Propounded to Defendant.

13

the trial court was correct in considering Appellees' motion for summary judgment, despite the fact that Appellant questioned whether discovery was completed. Moreover, because Appellant did not properly dispute any of Appellees' allegations regarding the extinguishment of the estate, resulting in the residuary trust not being funded, those facts must be taken as true for purposes of considering the summary judgment issue. *Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 539 (Tenn. Ct. App. 2012) ("[W]hen a non-moving party fails to respond to the moving party's statement of undisputed facts, the court may consider the facts admitted.").

Because he now admits that there were no funds left in the estate to fund the residuary trust, Appellant's argument that undistributed assets remained in the estate to fund the residuary trust is simply unsupported. Furthermore, because no funds remained in the estate to fund the residuary trust, Appellant's request that the residuary trust be funded from the property remaining in the estate is moot. *See Pylant*, 2012 WL 3984648, at *4. Accordingly, the trial court did not err in dismissing Cause of Action 2. Any issues regarding the expiration of the statute of limitations or laches are pretermitted.

### Cause of Action 3

Appellant's third cause of action contains the following relevant allegations:

> 53. On his hospital bed in December 1987, Decedent told [Appellant] and Defendant Mills, among other things, that the rest of his Estate was to be divided one-half (1/2) out right to his wife (Defendant Mills) and one-half (1/2) to a trust, for the benefit of the [Appellant], with Defendant Mills to receive the income from the trust during her life.
>
> 54. Defendant Mills acknowledged hearing Decedent's deathbed statements and did not dispute or voice any disagreement with the statements made by Decedent.
>
> 55. Decedent's Last Will and Testament provided, in part, inter alia, for Defendant Mills to receive out right an amount equal to

---

Nothing in this response, however, in any way disputes the fact that the estate had no assets from which to fund the residuary trust.

[9] Appellant did file a motion to compel discovery prior to the filing of Appellees' motion for summary judgment. However, the motion did not contain an affidavit, and therefore, it is not a proper response to the motion for summary judgment. In addition, Appellant does not raise the trial court's failure to compel Appellees to respond to discovery as an issue in this appeal. We note, however, that trial courts should not tolerate discovery responses that are evasive or unresponsive.

one-half (1/2) of the adjusted gross estate and the remaining one-half (1/2) of the adjusted gross estate to be distributed to Morris Mills, Trustee, for the benefit of the [Appellant] with net income payable to the Defendant for life.

56. In October 1988, when [Appellant] received the $200,000.00 partial specific bequest distribution, Defendant Mills assured [Appellant] that she was going to do what the Decedent wanted done, including setting up the trust that Decedent described on his deathbed and in his Will.

57. In June 1989, Defendant Mills filed an Interim Settlement reporting debits belonging to the Estate for which she was chargeable valued at $11,887,718.48.

60. Many years later in 2010, [Appellant] first became aware that the residual trust may not have been set up when Morris Mills stated to [Appellant] that "she [Defendant Mills] did not set up the trust like she was supposed to".

\* \* \*

62. Defendant Mills should be equitably estopped from repudiating her oral promises to set up the residual trust.

63. By making those promises, Defendant Mills intentionally induced [Appellant] to sign the Receipt and Waiver and thereby forego his right to notice of hearing, review of the final accounting and to enforce that the trust be set up as a condition of closing the Estate.

64. Equity will not permit Defendant Mills to act and set up a claim inconsistent with her promises to set up the trust that induced [Appellant] to sign the receipt and waiver and thereby unjustly enrich herself by keeping the assets which she promised would be distributed to the residuary trust.

As such, Appellant asserts that the doctrine of equitable estoppel requires that Ms. Mills act consistently "with her oral promises to set up the trust."

To prevail on a claim for equitable estoppel, a plaintiff must show:

(1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.

*Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 774 (Tenn. 2004) (citing *Consumer Credit Union v. Hite*, 801 S.W.2d 822, 825 (Tenn. Ct. App. 1990)). Equitable estoppel also requires the following elements with respect to the party asserting estoppel:

(1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially.

*Osborne*, 130 S.W.3d at 774 (citing *Hite*, 801 S.W.2d at 825). "The doctrine is ordinarily applicable only to representations as to facts, either past or present." *Hite*, 801 S.W.2d at 825. As explained by this Court:

In the typical equitable estoppel situation, the defendant has represented an *existing or past* fact to the plaintiff, who reasonably and in ignorance relied upon the representation to his detriment. Equitable estoppel necessarily precluded the claimant's reliance on the defendants' *present or future* intention, which initiated the development of promissory estoppel.

*Hood Land Trust v. Hastings*, No. M2009-02625-COA-R3-CV, 2010 WL 3928647, at *6 (Tenn. Ct. App. Oct. 5, 2010) (quoting 21 Steven W. Feldman, *Tennessee Practice Series: Contract Law and Practice* § 5.25 (2009) (emphasis in original)). "Thus, . . . we do not consider a promise alone sufficient to constitute a representation of material fact for purposes of equitable estoppel." *Hood Land Trust*, 2010 WL 3928647, at *6.

From our review, Appellant's third cause of action concerns exactly the type of promise that is insufficient to constitute a representation of material fact for purposes of equitable estoppel. Here, Appellant asserts that Ms. Mills promised "that she was going to do what the Decedent wanted done." Indeed, Appellant refers to the statements by Ms. Mills as "promises" and specifically asks the court to find that Ms. Mills is equitably estopped from "acting inconsistently with her oral promises to set up the trust." As the alleged statements by Ms. Mills concern future performance, rather than existing or past fact, they cannot form the

basis for a claim of equitable estoppel.[10] Because this Court is permitted to rely on grounds other than those cited by the trial court in granting a motion for summary judgment, *see Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001), we affirm the trial court's dismissal of this cause of action, concluding that Appellant's allegations, even if taken as true, are insufficient to make out a prima facie case of equitable estoppel. Any issues regarding the expiration of the statute of limitations or the application of laches are pretermitted.

## Cause of Action 4

Appellant's fourth cause of action concerns unjust enrichment and the establishment of a constructive trust. After recounting the above allegations concerning Decedent's deathbed statements, Decedent's will, and the allegation that assets remained in the estate for distribution, Appellant alleged:

> 66. [Appellant's] father accumulated his wealth by developing and building multifamily apartment complexes and single family homes.

> 68. [Appellant's] natural mother died in 1959 and [Appellant's] father married Defendant Mills in 1962.

> 69. Defendant Mills, who brought no assets into the marriage, did not work outside the home, and contributed nominal services to the Decedent's business.

> 70. [Appellant] began working for his father in the business after graduating from high school in 1967. Starting in 1970 he ran crews of workmen for his father in the construction business and was involved in the management of his father's business until Decedent's death in 1987, and his efforts substantially contributed to the accumulation of Decedent's wealth.

\* \* \*

---

[10] We note that promises as to future performance may create a cause of action under the doctrine of promissory estoppel. *See Nationsbank, N.A. (South) v. Millington Homes Investors, Ltd.*, No. 02A01-9805-CH-00134, 1999 WL 79204 at \* 3–4 (Tenn. Ct. App. Feb. 19, 1999) ("Promissory estoppel is defined as 'a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise....'"). Nothing in Appellant's complaint or appellate brief indicates that any of his claims rest on the doctrine of promissory estoppel. Accordingly, any argument regarding promissory estoppel is waived. *See generally Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002).

73. In October 1988, when Appellant received the $200,000.00 partial distribution of the specific bequest, Defendant Mills promised Appellant that she was going to do what the Decedent wanted done including setting up the trust that Decedent described on his deathbed and in his Will.

74. In January 1990, when [Appellant] received the $660,000.00 final distribution of the specific bequest, Defendant Mills again assured [Appellant] that she was going to do what the Decedent wanted done, including setting up the trust that Decedent described on his deathbed and in his Will.

\* \* \*

76, Alternatively, [Appellant] alleges that in the event that Defendant Mills contends that Decedent's property was held in joint tenancy or tenancy by the entirety with the right of survivorship, the evidence will show that such tenancy did not constitute an ademption by extinction because Decedent and Defendant Mills did not intend to create a true joint tenancy; but rather used the joint tenancy solely for convenience as an informal estate planning tool to save taxes or as a property management device during his life. At all times material Decedent and Defendant Mills intended that Defendant Mills hold the joint interest as trustee for the Decedent and/or the [Appellant], and that the property be bequeathed and devised in accordance with the Will.

77. Consistent with that position, in February 1988, Defendant Mills individually executed a disclaimer regarding the municipal bonds in which she renounced and refused to accept the tenancy by the entirety interest in said bonds valued at $750,000.00 par value which became a part of the assets in the estate.

78. However, regarding the remainder of the property in Decedent's estate, the evidence will show that Defendant Mills acted inconsistently with Decedent's intentions stated in the Will and her oral promises to establish the residual trust and she wrongfully asserted a[n] unrestricted claim to ownership of all of the rest and remainder of Decedent's property.

18

79. In 2010, [Appellant's] uncle, Morris H. Mills, who Decedent designated in the Will as Trustee of the residual trust, stated to [Appellant] that, "she [Defendant Mills] did not set up the trust like she was supposed to".

80. Upon information and belief, Defendant Mills has caused most, if not all, of the assets which were a part of Decedent's estate to be transferred into the Nita D. Mills Revocable Living Trust of which Defendant Johnson is Trustee, including assets that Defendant Mills, as Executrix, had a duty to distribute to Morris Mills as Trustee of the residual trust.

81. Defendant Mills has wrongfully obtained title to the property in breach of both her fiduciary duty and her equitable duty to establish the residual trust for the benefit of [Appellant] to whom it rightfully belongs. Defendant Mills'[s] claim of ownership of the property is wrongful and would unjustly enrich Defendant Mills if she is allowed to retain it.

82. [Appellant] has no adequate remedy available at law.

Accordingly, Appellant asks that the court to find that Ms. Mills was unjustly enriched and to impose a constructive trust for his benefit over assets equal to one-half of Decedent's assets at death.

The elements of an unjust enrichment claim are: "1) '[a] benefit conferred upon the defendant by the plaintiff;' 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" ***Freeman Indus., LLC v. Eastman Chem. Co.***, 172 S.W.3d 512, 525 (Tenn. 2005) (internal citations omitted) (quoting ***Paschall's, Inc. v. Dozier***, 219 Tenn. 45, 407 S.W.2d 150, 155 (Tenn. 1966)). "The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust." ***Freeman***, 172 S.W.3d at 525 (citing ***Paschall's***, 407 S.W.2d at 155). The Tennessee Supreme Court has held that unjust enrichment is synonymous with a claim for quantum meruit. ***Paschall's, Inc. v. Dozier***, 219 Tenn. 45, 53, 407 S.W.2d 150, 154 (Tenn. 1966) ("Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same."). The essential elements of claim under a theory of quantum meruit are:

(1) there must be no existing, enforceable contract between the parties covering the same subject matter[;]

(2) the party seeking recovery must prove that it provided valuable goods and services[;]

(3) the party to be charged must have received the goods and services[;]

(4) the circumstances must indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated[;]

(5) the circumstances must also demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them.

*Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App.1995) (internal citations omitted).

With regard to the remedy of constructive trust, this Court has explained:

"A constructive trust may only be imposed against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment or questionable means, has obtained an interest in property which he ought not in equity or in good conscience retain." *Intersparex Leddin KG v. Al-Haddad*, 852 S.W.2d 245, 249 (Tenn. Ct. App. 1992) (citing *Livesay* [*v. Keaton*], 611 S.W.2d [581] at 584 [(Tenn. Ct. App. 1980)]).

Tennessee has imposed constructive trusts in four types of cases. They are: (1) where a person procures the legal title to property in violation of some duty, express or implied, to the true owner; (2) where the title to property is obtained by fraud, duress or other inequitable means; (3) where a person makes use of some relation of influence or confidence to obtain the legal title upon more advantageous terms than could otherwise have been obtained; and (4) where a person acquires property with notice that another is entitled to its benefits.

*Myers v. Myers*, 891 S.W.2d 216, 219 (Tenn. Ct. App. 1994).

20

***Story v. Lanier***, 166 S.W.3d 167, 185 (Tenn. Ct. App. 2004). The plaintiff has the burden to establish the existence of a constructive trust by clear and convincing evidence. ***Id.*** (citing ***Browder v. Hite***, 602 S.W.2d 489, 493 (Tenn. Ct. App. 1980)).

First, we note that Appellant cannot prevail on any claim that there were remaining undistributed funds in Decedent's estate from which Ms. Mills was required to fund the residuary trust, as we have already determined that no funds remained in the estate to fund the trust. In addition to that argument, however, Appellant offers another theory of recovery, namely that the property held by Decedent and Ms. Mills as tenants by the entirety was merely held in that fashion for tax purposes and that such property should have been utilized to fund the residuary trust. As such, Appellant seeks a constructive trust of one-half of the property that was held by Decedent and Ms. Mills as tenants by the entirety at Decedent's death.

Here, Appellant's complaint specifically alleges that "the evidence will show that . . . Decedent and [Ms.] Mills did not intend to create a true joint tenancy; but rather used the joint tenancy solely for convenience as an informal estate planning tool to save taxes or as a property management device during his life." A thorough review of the record indicates, however, that Appellees have met their burden to "[d]emonstrate[] to the court that the [Appellant's] evidence is insufficient to establish" this fact. *See* Tenn. Code Ann. § 20-16-101 (Supp. 2012). Although not specifically cited by the trial court in its order granting the motion for summary judgment, Appellees did argue in their memorandum in support of their motion for summary judgment that a substantial portion of Decedent's property was owned in a tenancy by the entirety with Ms. Mills. Indeed, Appellees' Statement of Undisputed Facts specifically states that:

> 7. At the time of the death of the Decedent [], the total value of the assets owned jointly with right of survivorship and/or as tenants by the entirety between the Decedent [], and his spouse, [Ms.] Mills, was $8,193,203.58.

> 8. At the time of the death of the Decedent [], the total value of the assets individually owned by the Decedent [], was $198,110.99.

Thus, Appellees' Statement of Undisputed Facts specifically establishes that the majority of Decedent's property was owned jointly with Ms. Mills.

As previously discussed, property owned in a tenancy by the entirety is not distributable in probate, but passes to the surviving spouse immediately upon death. *See* ***Grahl v. Davis***, 971 S.W.2d 373, 378 (Tenn. 1998) ("The essential characteristic of a tenancy by the entirety is that 'each spouse is seized of the whole or the entirety and not of a share,

21

moiety, or divisible part.'") (quoting *Sloan v. Jones*, 192 Tenn. 400, 241 S.W.2d 506, 507 (Tenn. 1951)); *see also In re Estate of Ladd*, 247 S.W.3d 628, 644 (Tenn. Ct. App. 2007) ("The right of survivorship attains further significance to the matter at issue because personal property held by a husband and wife does not become part of the probate estate for purposes of administration. Assets subject to the right of survivorship, such as the bond at issue, pass to the surviving spouse by operation of law and do not become part of the probate assets in the hands of the personal representative of the deceased spouse."). Additionally, property acquired during marriage enjoys a presumption that it is held as tenants by the entirety. *Smith v. Sovran Bank Cent. S.*, 792 S.W.2d 928, 930 (Tenn. Ct. App. 1990) ("[T]he presumption of the creation of a tenancy by the entirety can be rebutted only when a contrary intention is expressed in the instrument itself, as opposed to extrinsic evidence."). Accordingly, it is Appellant's burden to show that Ms. Mills was not legally entitled to this property.

Appellant has clearly not met his burden in this case. A thorough review of the record reveals no evidence, documentary or otherwise, that would rebut the strong presumption in favor of tenancy by the entirety. Although Ms. Mills acted in favor of Appellant by disclaiming some of her survivorship property, we cannot conclude that her benevolent action is evidence that Decedent intended that all survivorship property be distributed in the estate. Indeed, Decedent's will specifically states that the residuary trust created for the benefit of Appellant was only to include the "rest, residue, and remainder of my **estate**, real, personal and mixed." (emphasis added). Nothing in the record indicates that Decedent was not a reasonably sophisticated party or that his will was not drafted by an attorney. Because Decedent's will establishes a residuary trust of only the assets remaining in the estate, and the term "estate" only includes probate assets, we cannot conclude that Decedent's will indicates his intention that Appellant should be entitled to a trust containing not only estate assets, but also non-probate property.

In this case, Ms. Mills simply retained the property that passed to her by operation of law. Although Appellant asserts that her retention of this property is unjust because it is contrary to Decedent's stated intentions, we cannot agree. First, we note that Decedent's deathbed statements, even if taken as true, were not legally binding. Tennessee law recognizes only three legally binding wills: (1) attested wills; (2) holographic wills; and (3) nuncupative wills. *See* Tenn. Code Ann. §§ 32-1-104 to -106. Decedent's deathbed statements fail to satisfy the requirements of any of the recognized will types. *See* Tenn. Code Ann. § 32-1-104 (requiring for an attested will, that the will be signed by the testator, who signifies to two witnesses that the instrument is his will, and the two witnesses sign the will in the presence of the testator and each other); Tenn. Code Ann. § 32-1-105 (requiring "the signature and all its material provisions must be in the handwriting of the testator and the testator's handwriting must be proved by two (2) witnesses" to prove a holographic will); Tenn. Code Ann. § 32-1-106 (requiring for a valid nuncupative will, that the oral will be

22

witnessed by two disinterested witnesses and dispose only of personal property not exceeding $1,000.00). Accordingly, while the parties may have felt a moral imperative to abide by Decedent's stated wishes, there was no legal duty to do so.

Second, we hold that Ms. Mills's retention of property that she was legally entitled to retain is not an injustice that will support a claim of unjust enrichment. As previously discussed, the most significant requirement for a claim of unjust enrichment is that the retention of the benefit is unjust. *Freeman*, 172 S.W.3d at 525. The retention of a benefit is unjust for purposes of an unjust enrichment claim:

> [I]f the donor of the benefit acted under a mistake of fact or in misreliance on a right or duty, or the recipient of the benefit engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. The term "unjustly" can mean illegally or unlawfully.

42 C.J.S. *Implied Contracts* § 9 (footnotes omitted). As previously discussed, Ms. Mills had no legal duty to ensure that Appellant received any portion of property that passed to her as a tenant by the entirety. Clearly, Ms. Mills did not act illegally or unlawfully in retaining property that passed to her by operation of law. There is also no proof that Ms. Mills obtained her interest in the tenancy by the entirety property by fraud, duress, or other inequitable means, as would be required to impose a constructive trust. *Myers v. Myers*, 891 S.W.2d 216, 219 (Tenn. Ct. App. 1994) (requiring to impose a constructive trust that the property was "obtained by fraud, duress or other inequitable means"). Instead, she simply retained the lawful benefit of her joint tenancy with Decedent. Accordingly, Appellant simply cannot show that Ms. Mills's retention of the joint tenancy property was unjust.

Finally, nothing in the record indicates that Appellant provided Ms. Mills with any benefit. *See Castelli*, 910 S.W.2d at 427 (requiring as an element of a claim under quantum meruit that "the party seeking recovery must prove that it provided valuable goods and services" to the opposing party). Surely, Ms. Mills received a benefit at Decedent's death of all the couple's tenancy by the entirety property that passed to her by operation of law. However, this property was never owned by Appellant and he has asserted no legal claim to it prior to it vesting with Ms. Mills, other than Decedent's alleged non-binding deathbed statements. Accordingly, it appears that Appellant's evidence is insufficient to prove that he provided any goods, property, or other valuable benefit to Ms. Mills.

Based on the foregoing, we conclude that the trial court did not err in granting summary judgment dismissing Appellant's fourth cause of action. *See Hill v. Lamberth*, 73 S.W.3d at 136 ("Although the trial court granted summary judgment on the basis of foreseeability, this Court may affirm the trial court's decision when rendered on different

23

grounds."). Any issues regarding the expiration of the statute of limitations or laches are pretermitted.

## Fifth Cause of Action

In his fifth cause of action, Appellant generally recounts the relevant allegations regarding Decedent's deathbed statements, the administration of the will, and Ms. Mills's alleged assurances that the residuary trust would be funded. According to Appellant, Ms. Mills has "wrongfully asserted a claim of ownership to property which she held as trustee for the Decedent or his successor, [Appellant]." As such, Appellant requests that a resulting trust be imposed on assets equal to one-half Decedent's net assets at death.

The Tennessee Supreme Court has described the purposes and characteristics of a resulting trust as follows:

> The imposition of a resulting trust is an equitable remedy; the doctrine of resulting trust is invoked to prevent unjust enrichment. Such a trust is implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises. Broadly speaking, a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and there ordinarily being no fraud or constructive fraud involved.
>
> While resulting trusts generally arise (1) on a failure of an express trust or the purpose of such a trust, or (2) on a conveyance to one person on a consideration from another— sometimes referred to as a "purchase-money resulting trust"— they may also be imposed in other circumstances, such that a court of equity, shaping its judgment in the most efficient form, will decree a resulting trust—on an inquiry into the consideration of a transaction—in order to prevent a failure of justice. However, the particular circumstances under which a resulting trust may arise varies from jurisdiction to jurisdiction.

*In re Estate of Nichols*, 856 S.W.2d 397, 401 (Tenn. 1993) (quoting 76 Am.Jur.2d *Trusts* § 166, pp. 197–98 (1992)). According to this Court:

> "The equitable power to establish a resulting trust applies with respect to both real and personal property." ***Wardell v. Dailey***, 674 S.W.2d 293, 295 (Tenn.Ct.App.1984). Such trusts often arise when the law presumes the parties intended to create a resulting trust. ***Harwell*** [***v. Watson***], [No. E2003–01796–COA–R3–CV,] 2004 WL 1434505, at *3, 2004 Tenn.App. LEXIS 399, at *6 [(Tenn. Ct. App. June 25, 2004)]. "A resulting trust may be proven, and is typically proven, by parol evidence." ***Saddler*** [***v. Saddler***], 59 S.W.3d [96,] 99 [(Tenn. Ct. App. 2000)] (citations omitted). "However, when one attempts to create a resulting trust on the basis of parol evidence, such a trust must be shown by more than a mere preponderance of the evidence." ***Wardell***, 674 S.W.2d at 295 (citations omitted). The party alleging the existence of a resulting trust must prove its existence by clear and convincing evidence. ***Saddler***, 59 S.W.3d at 99; ***Rowlett v. Guthrie***, 867 S.W.2d 732, 735 (Tenn.Ct.App.1993); ***Wardell***, 674 S.W.2d at 295. **"The testimony of a single, interested witness typically is insufficient to establish a resulting trust by clear, convincing, and irrefragable evidence."** ***Saddler***, 59 S.W.3d at 99.

*Story v. Lanier*, 166 S.W.3d 167, 184 (Tenn. Ct. App. 2004) (emphasis added).

Appellant has failed to provide sufficient evidence to meet the clear and convincing standard of proof, as his evidence supporting his theory of resulting trust is supported by only his testimony. *See Story*, 166 S.W.3d at 184 (indicating that more than the testimony of a single interested witness is sufficient to establish a resulting trust). In his reply brief, Appellant asserts that substantial evidence supports his request for a resulting trust in this case, including his own affidavit, the Last Will and Testament of his opponent Ms. Mills, and a trust created by her. Certainly, Appellant's affidavit contains allegations that Ms. Mills made continuous assurances to him that she would create a trust for Appellant's benefit representing one-half of Decedent's total assets at death. Appellant argues, however, that Ms. Mills's will and her trust also support his theory of a resulting trust because they show that Ms. Mills intended that portions of her property would pass to Appellant and his children at her death. According to Appellant, these documents create an inference that Ms. Mills "acted upon her equitable duty to pass on jointly held assets – not just assets in the probate estate – to Appellant consistent with [D]ecedent's deathbed wishes and with her representations to Appellant." We cannot agree that these documents support any assertion on Appellant's

25

behalf that Ms. Mills had wrongfully asserted a claim over Decedent's property at his death. Instead, they simply show that despite the fact that Ms. Mills received considerable property from Decedent free from any claim by Appellant, she intended to provide for Appellant at her death, much like she disclaimed her interest in certain property during the administration of Decedent's estate. To infer anything more from these documents would be pure speculation. Because these documents do not support Appellant's theory of recovery, we conclude that Appellant's affidavit, standing alone, is insufficient to meet the clear and convincing standard of proof required to prove a resulting trust. *See also **In re Estate of Cammack***, No. M1999-02382-COA-R3-CV, 2000 WL 1679492, at *7 (Tenn. Ct. App. Nov. 9, 2000) (granting summary judgment, even in the face of two affidavits and a contract between the parties that arguably provided support for the resulting trust). Accordingly, although we rely on different grounds, the trial court's order granting summary judgment dismissing this cause of action is also affirmed. *See **Hill v. Lamberth***, 73 S.W.3d at 136. Any issues regarding the expiration of the statute of limitations or laches are pretermitted.

## Conclusion

The judgment of the Chancery Court of Shelby County is affirmed and this cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant, Robert W. Mills, and his surety.

_____
J. STEVEN STAFFORD, JUDGE